T.C. Memo. 2004-132


UNITED STATES TAX COURT



FRANK CHEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 1271-03.            Filed June 1, 2004.



        During 1999, P incurred a net loss of $84,794 in
connection with 323 transactions involving the purchase
or sale of securities, most of which P held for less
than 1 month.  Approximately 94 percent (303) of those
transactions occurred during February, March, and April
1999, with no transactions occurring in 6 of the other
9 months.  Attached to P's petition was a purported
retroactive election under sec. 475(f)(1), I.R.C., of
mark-to-market accounting, available to "traders in
securities", to be effective as of Jan. 1, 1999.  P
claims that, pursuant to that election, he is entitled
to treat the loss arising out of his 1999 trading
activities as a fully deductible, ordinary loss
incurred in a trade or business under sec. 165(c)(1),
I.R.C.

        1.  <u>Held</u>:  During 1999, P was not a "trader in
securities" eligible to make a mark-to-market election
under sec. 475(f)(1), I.R.C.

2.  Held, further, P is entitled to deduct his 1999 net loss from purchases and sales of securities to the extent of $3,000.  Secs. 165(f), 1211(b)(1), I.R.C.

Frank Chen, pro se.

Paul T. Butler and Lindsey D. Stellwagen, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  By notice of deficiency mailed to petitioner on October 15, 2002[1] (the notice), respondent determined a deficiency in petitioner's 1999 Federal income tax of $611,357 and additions to tax totaling $252,093.  On brief, respondent concedes the additions to tax.  As a result of an agreement between the parties, the only issue remaining for decision is whether petitioner's net loss of $84,794 from the purchase and sale of securities during 1999[2] is, for that year, deductible in full, or, pursuant to a limitation applicable to capital losses, only to the extent of $3,000.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1999, and all Rule

---

[1]  Because of administrative error, the notice of deficiency was dated Oct. 15, 2003.

[2]  We assume from the stipulation of the parties that the net loss of $84,794 was realized upon actual sales of the securities in question.

references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

## FINDINGS OF FACT

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Shanghai, China.

Petitioner's Purchases and Sales of Securities

During 1999, petitioner maintained two brokerage accounts for conducting securities transactions: one with Charles Schwab & Co., Inc., and one with Datek Online Brokerage Services, which subsequently merged with Ameritrade. During 1999, through those two accounts, petitioner initiated 323 transactions involving the purchase or sale of securities (including short sales), broken down by month as follows:

| Month | Number of Trades |
| --- | --- |
| January | 12 |
| February | 133 |
| March | 145 |
| April | 25 |
| May | 4 |
| July | 4 |

Petitioner held most of those securities for less than a month, and petitioner's 1999 short sales were generally covered

by the purchase of securities within a month.  To assist him in deciding which securities to invest or trade in, petitioner used software that enabled him to receive up-to-date information such as "Level II NASDAQ quotations" and Dow Jones "real time" data.

For all of 1999, petitioner resided in San Jose, California, and was employed, full time, by MediaQ, Inc. as a computer chip engineer.  He received wages of $74,699 from his employer in 1999.

Petitioner's Purported Election Under Section 475(f)

Petitioner did not timely file a Federal income tax return for 1999.  After receipt of the notice, petitioner timely filed an "imperfect" petition[3] on January 22, 2003, which was later perfected by the filing of an amended petition on March 14, 2003.  Attached to the amended petition is a copy of a Form 1040, U.S. Individual Income Tax Return, for 1999 together with various documents attached to that return, including copies of (1) a purported retroactive election, under section 475(f) (dated March 9, 2003, to be effective January 1, 1999), of the mark-to-market method of accounting for traders in securities (the election), and (2) a purported cover letter conveying the election to the IRS and describing the election as "an application for making election under section 475(f)".  In the election itself, under

---

[3]  The petition was signed by a representative of petitioner's who was not admitted to practice before this Court.

the heading "RULING REQUESTED", petitioner "[requests] Service authority [to] implement mark-to-market accounting methods [sic] to Jan. 1, 1999," and he affirmatively states that he became a daily trader effective as of that date.

OPINION

I. Background:  Effect of Trader Status and a Mark-To-Market Election Under Section 475(f)

Assuming that, during 1999, petitioner was engaged in a trade or business (sometimes, without distinction, business) as a "trader in securities", he would have been eligible to elect to "recognize gain or loss on any security held in connection with such trade or business at the close of any taxable year as if such security were sold at its fair market value * * * [at yearend]".  Sec. 475(f)(1)(A)(i).  In general, any gains or losses with respect to such securities, whether deemed sold at yearend under the mark-to-market method of accounting or actually sold during the taxable year, "shall be treated as ordinary income or loss."  Sec. 475(d)(3)(A), (f)(1)(D).  If, during 1999, petitioner was in business as a trader in securities and he made a mark-to-market election under section 475(f)(1) with respect to sales of securities held in connection with that business, petitioner's 1999 net loss from that business would be an ordinary loss, deductible in full under section 165(c)(1).  Conversely, if petitioner is considered an investor in securities during 1999, or, assuming trader status, he failed to make an

effective mark-to-market election for that year under section 475(f)(1), his 1999 net loss from purchases and sales of securities would be a capital loss deductible only to the extent of $3,000.  See secs. 165(f), 1211(b)(1).

II.  Arguments of the Parties

A.  Petitioner's Argument

Petitioner argues that, by virtue of the volume and short-term nature of his securities trades during 1999, the time devoted daily to his trading activities, and his substantial investment in software used to provide information regarding up-to-the-minute market conditions, he qualified as a "trader in securities" for purposes of section 475(f)(1).[4]

Petitioner further argues that, because he was, in fact, a trader as of January 1, 1999, and was unaware of the requirement to timely elect mark-to-market accounting under section 475(f) in order to treat his trading losses as fully deductible ordinary losses under section 165(c)(1), he should be permitted to make an untimely, retroactive election under that section.  We interpret petitioner's "request" to "implement" mark-to-market accounting and his defense of his right to do so untimely as, in substance, an argument that we must find that (1) the election of mark-to-market accounting attached to petitioner's return was an informal

---

[4]  The term "trader in securities" is not further defined in sec. 475 or in the regulations interpreting that section.

request, pursuant to section 301.9100-3, Proced. & Admin. Regs., for an extension of time to make the election, and (2) respondent improperly denied that request.

B.  Respondent's Argument

Respondent argues that petitioner's brief foray into high-volume, short-term securities trading, during 1999, was of insufficient duration to enable him to qualify as a "trader in securities" for purposes of section 475(f)(1).

Respondent further argues that, even if petitioner qualified as a trader in securities as of January 1, 1999, he failed to make an effective mark-to-market election under section 475(f) and Rev. Proc. 99-17, 1999-1 C.B. 503, pursuant to which an election effective for taxable years beginning on or after January 1, 1999, should have been filed "not later than the due date (without regard to extensions) of the original * * * return for the taxable year immediately preceding the election year", or, in this case, by April 15, 1999, the due date of petitioner's 1998 return.  See Rev. Proc. 99-17, 1999-1 C.B. at 504.

Lastly, respondent argues that petitioner "never made a request for an extension of time to make the [section 475(f)] election."

III.  Petitioner's Status as a Trader in Securities

    A.  Applicable Principles of Law

    In general, for Federal tax purposes, a person who purchases and sells securities falls into one of three distinct categories: dealer, trader, or investor.  See King v. Commissioner, 89 T.C. 445, 458-459 (1987).  Both traders and dealers are engaged in the trade or business of buying and selling securities.  Only the dealer's business, however, involves sales to customers in the ordinary course of that business.  Consequently, only the dealer's securities fall within the exception to capital asset status that is provided for "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business".  Sec. 1221(a)(1).  Thus, "traders * * * occupy an unusual position with respect to the tax laws.  Traders may engage in a trade or business which produces capital gains and losses rather than ordinary income and losses."  King v. Commissioner, supra at 457.

    In order to qualify as a trader (as opposed to an investor) petitioner's purchases and sales of securities during 1999 must have constituted a trade or business.  "In determining whether a taxpayer who manages his own investments is a trader, and thus engaged in a trade or business, relevant considerations are the taxpayer's investment intent, the nature of the income to be derived from the activity, and the frequency, extent, and

regularity of the taxpayer's securities transactions." Moller v. United States, 721 F.2d 810, 813 (Fed. Cir. 1983). In general, investors purchase and hold securities "for capital appreciation and income" whereas traders buy and sell "with reasonable frequency in an endeavor to catch the swings in the daily market movements and profit thereby on a short-term basis." Liang v. Commissioner, 23 T.C. 1040, 1043 (1955). For a taxpayer to be considered a trader, the taxpayer's trading activity must be "substantial", and it must be "frequent, regular, and continuous to be considered part of a trade or business. * * * Sporadic trading does not constitute a trade or business." Boatner v. Commissioner, T.C. Memo. 1997-379, affd. 164 F.3d 629 (9th Cir. 1998); see also Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987) ("We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity * * *. A sporadic activity * * * does not qualify.").

B. Application of Trader Status Criteria to Petitioner

Respondent concedes that for "parts of the months of February, March, and April, petitioner engaged in daily transactions." It also seems clear that, during those 3 months, petitioner satisfied the first requirement for trader status, that he buy and sell with frequency in order "to catch the swings in the daily market movements". See Liang v. Commissioner, supra

at 1043.  Petitioner's problem is that he fails to satisfy the second, equally important requirement for trader status, that his purchases and sales of securities be "frequent, regular, and continuous".  See <u>Boatner v. Commissioner</u>, <u>supra</u>.

Because 303, or approximately 94 percent, of the 323 transactions in which petitioner either purchased or sold securities during 1999 occurred in the February to April timeframe, with the balance occurring in January, May, and July and no trades occurring in any of the other 6 months, petitioner's 1999 trading activity reasonably qualified as "frequent, regular, and continuous" only during February, March, and April.[5]  Moreover, throughout 1999, petitioner maintained a full-time job as a computer chip engineer.

In the cases in which taxpayers have been held to be traders in securities, the number and frequency of transactions indicated that they were engaged in market transactions almost daily for a substantial and continuous period, generally exceeding a single taxable year; and those activities constituted the taxpayers' sole or primary income-producing activity.  See <u>Levin v. United</u>

---

[5]  In his purported election of the mark-to-market accounting method, petitioner represents that he became a "daily trader" as of Jan. 1, 1999.  Moreover, his 2000 and 2001 returns report his gains and losses from purchases and sales of securities on Schedule D, Capital Gains and Losses, not on Schedule C, Profit or Loss From Business.  Thus, the evidence indicates that petitioner's daily trading activities occurred only during the 3 months of February, March, and April 1999.

States, 220 Ct. Cl. 197, 597 F.2d 760 (1979); Fuld v. Commissioner, 139 F.2d 465 (2d Cir. 1943), affg. 44 B.T.A. 1268 (1941). Conversely, where, as in this case, (1) the taxpayer's daily trading activities covered only a portion of a single taxable year, and (2) securities trading was not the sole or even primary activity in which the taxpayer engaged for the production of income, trader status was denied. See Paoli v. Commissioner, T.C. Memo. 1991-351. Daily trading in securities for only a quarter of a single taxable year is reasonably characterized as "sporadic" rather than "frequent, regular, and continuous", and, therefore, insufficient to achieve trader status. Boatner v. Commissioner, supra; see also Commissioner v. Groetzinger, supra.

C. Conclusion

Petitioner failed to qualify as a trader in securities during 1999.

IV. Effect of Petitioner's Purported Retroactive Election of the Mark-to-Market Method of Accounting Under Section 475(f)

Because we find that petitioner was not a trader in securities during 1999, a mark-to-market election under section 475(f) is not available to petitioner for that year. Sec. 475(f)(1). Therefore, we do not address petitioner's argument that he was improperly denied the right to make such an election.

V.  <u>Conclusion</u>

Petitioner is entitled to deduct his 1999 net loss from purchases and sales of securities to the extent of $3,000.  See secs. 165(f), 1211(b)(1).

<u>Decision will be entered</u>

<u>under Rule 155</u>.