T.C. Memo. 2009-287


UNITED STATES TAX COURT


SANJAY AND RASHMI KOHLI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22971-08.                    Filed December 14, 2009.


<u>Robert M. McCallum</u> and <u>Deborah R. Jaffe</u>, for petitioners.

<u>Randall E. Heath</u>, for respondent.


MEMORANDUM OPINION


KROUPA, <u>Judge</u>:  This matter is before the Court on respondent's motion for partial summary judgment filed pursuant to Rule 121.[1]  We are asked to decide if petitioner Sanjay Kohli (Mr. Kohli) made an effective mark-to-market election for the

_____

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year at issue, unless otherwise indicated.

2000 taxable year under section 475(f).  We hold that Mr. Kohli did not make an effective election, and therefore we shall grant respondent's motion for partial summary judgment.

Background

We recite uncontested facts admitted in the petition, respondent's motion, petitioners' objection to respondent's motion and the supporting memorandum, and in the exhibits attached to these documents.  Petitioners resided in India when they filed the petition.

Mr. Kohli began working as a computer scientist for Infospace, a startup technology firm, in 1996.  He received Infospace stock options as part of his compensation package.  Mr. Kohli began buying and selling securities while working at Infospace and exercised some of the options for Infospace stock worth $17 million in 1999.

Mr. Kohli left Infospace in March 2000 to devote more time to his securities activities[2] and exercised the remaining options for approximately $55 million worth of Infospace stock.  His Infospace stock value declined dramatically by the end of 2000.  The total value of his remaining shares by year-end had plummeted to almost $9.5 million, a decrease of $45 million.

Mr. Kohli relied on the advice of a certified public accountant (CPA) concerning all tax-related matters.  His CPA did

---

[2]The extent of his transactions in stock is left for later factual development.

not advise him or discuss with him the tax ramifications of being a full-time securities trader.  Petitioners timely filed a Federal income tax return for 1999 but Mr. Kohli did not make any election or attach any statement.

Mr. Kohli hired a new CPA firm for 2000.  The new firm informed him of the mark-to-market election for trading activities.  In April 2001 Mr. Kohli filed an election to use the mark-to-market accounting method for the 2000 taxable year as well as a request for an automatic extension of time to file the return for 2000.  He also filed a request for a private letter ruling that he made a late but effective election of the mark-to-market accounting method for 2000.

Mr. Kohli reported $57 million as ordinary wage income, most of which came from the exercise of the stock options in the beginning of 2000 before he left Infospace.  He offset that ordinary income by reporting a total ordinary loss of $60,728,125.89 by using the mark-to-market method of accounting for 2000.  This accounting method allowed him to claim a deduction for the unrealized decrease in the value of Infospace shares that he received from exercising his stock options in 2000.  Mr. Kohli also claimed over $1 million in ordinary losses resulting from the sale of several thousand shares of stock in 2000.  Petitioners did not file the return for 2000 until October 15, 2001.  Respondent thereafter denied Mr. Kohli's request to elect the mark-to-market method of accounting for 2000.

Respondent issued petitioners a deficiency notice for 2000 determining that the ordinary losses Mr. Kohli claimed in 2000 were capital losses because he had not made an effective or timely mark-to-market election under section 475(f).[3] Petitioners filed a timely petition.

Respondent filed a motion for partial summary judgment on whether Mr. Kohli made an effective mark-to-market election for the 2000 tax year under section 475(f).

## Discussion

### Summary Judgment Standard

We are asked to decide whether it is appropriate to grant partial summary judgment. Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See, e.g., FPL Group, Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). Either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(a). The Court may grant partial summary judgment on a matter as to which there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. See Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). We conclude that no genuine issue of material fact exists regarding

---

[3]Respondent also determined alternatively that the losses were capital losses even if Mr. Kohli made an effective mark-to-market election because the securities trading activity was not a trade or business. Whether Mr. Kohli's activity constitutes a trade or business is not before the Court in this motion; the motion relates solely to the sec. 475 election.

whether Mr. Kohli made an effective mark-to-market election for the 2000 tax year, and a decision may be rendered as a matter of law.

General Rules of the Mark-to-Market Accounting Method

We begin by describing the general rules of the mark-to-market accounting method. A taxpayer engaged in a trade or business as a securities trader may elect to use the mark-to-market accounting method to compute gain or loss on any security held in connection with the trade or business. Sec. 475(f)(1)(A)(i); see Knish v. Commissioner, T.C. Memo. 2006-268; Lehrer v. Commissioner, T.C. Memo. 2005-167, affd. 279 Fed. Appx. 549 (9th Cir. 2008); Chen v. Commissioner, T.C. Memo. 2004-132. A securities trader electing mark-to-market recognizes an ordinary gain or loss on all securities held in connection with the securities trading business as if the securities were sold at the end of the year for fair market value. Sec. 475(f)(1)(A)(i). Any gain or loss must be taken into account that year. Sec. 475(f)(1)(A)(ii). Conversely, a taxpayer may deduct the net loss only to the extent of any capital gain plus $3,000 if the taxpayer does not properly elect to use the mark-to-market method. See secs. 165(a), (c), (f), 1211(b)(1); Knish v. Commissioner, supra; Lehrer v. Commissioner, supra; Chen v. Commissioner, supra. A mark-to-market election may therefore be advantageous for a taxpayer who has incurred trading losses,

realized or unrealized, while disadvantageous for a taxpayer who has made trading gains.

## Mark-to-Market Election Procedures

Respondent asserts that Mr. Kohli's mark-to-market election was not timely. The Commissioner has set forth the procedures for making a mark-to-market election. See Rev. Proc. 99-17, 1999-1 C.B. 503. A taxpayer must file a statement electing the mark-to-market accounting method no later than the due date for the tax return for the year immediately preceding the election year. Id. sec. 5.03, 1999-1 C.B. at 504-505. This statement must be attached to that return or to a request for an extension of time to file that return. Id. Mr. Kohli was therefore required to make an election for 2000 by April 17, 2000, the due date of the Federal income tax return for 1999, the year preceding the year in which the election was to be effective. Here, Mr. Kohli did not make the election for 2000 until April 27, 2001, over 12 months late.

## Applicability of the Substantial Compliance Doctrine

Mr. Kohli admits not filing the mark-to-market election with the return for 1999 but cites the "substantial compliance doctrine" to validate his election. Courts have held that a securities trader failed to make an election under section 475 where the trader did not follow the election requirements of Rev. Proc. 99-17, supra. Kantor v. Commissioner, T.C. Memo. 2008-297; see Knish v. Commissioner, supra; Acar v. United States, 98 AFTR

2d 2006-6296, 2006-2 USTC par. 50,529 (N.D. Cal. 2006), affd. 545 F.3d 727 (9th Cir. 2008). Mr. Kohli claims to have substantially complied with the election rules by filing a late election immediately upon discovering that an election could convert capital losses to ordinary losses.

We find that the substantial compliance doctrine[4] has no place in determining whether a timely election has been made. Rev. Proc. 99-17, supra, fixes a deadline by which the election must be made, a deadline that Mr. Kohli missed. Mr. Kohli failed to properly submit an election with the return for 1999 and did not make an election until over 12 months later. Accordingly, no formulation of the substantial compliance doctrine would entitle Mr. Kohli to relief.

Availability of Section 9100 Relief

Mr. Kohli also claims he is entitled to relief under section 301.9100-3, Proced. & Admin. Regs. (section 9100 relief). We disagree. A taxpayer may seek section 9100 relief for a late mark-to-market election if certain conditions are satisfied. The Commissioner grants a request for section 9100 relief if the

---

[4]The substantial compliance doctrine is a narrow equitable doctrine that courts use to avoid taxpayer hardship if the taxpayer establishes that he or she intended to comply with a provision, did everything reasonably possible to comply with the provision, but did not comply with the provision because of a failure to meet the provision's specific requirements. Samueli v. Commissioner, 132 T.C. ___, ___ (May 18, 2009) (slip op. at 14-15); see also Sawyer v. County of Sonoma, 719 F.2d 1001, 1007-1008 (9th Cir. 1983); Fischer Indus., Inc. v. Commissioner, 87 T.C. 116, 122 (1986), affd. 843 F.2d 224 (6th Cir. 1988).

taxpayer establishes that he or she acted reasonably and in good faith and the grant of relief will not prejudice the Government's interests. Sec. 301.9100-3(a), Proced. & Admin. Regs.; see <u>Vines v. Commissioner</u>, 126 T.C. 279 (2006). A taxpayer requesting section 9100 relief should submit evidence, including affidavits, supporting his or her claim. Sec. 301.9100-3(e), Proced. & Admin. Regs.

A taxpayer is deemed not to have acted reasonably and in good faith if the taxpayer uses hindsight in requesting relief. Sec. 301.9100-3(b)(3)(iii), Proced. & Admin. Regs. The Commissioner ordinarily will deny relief if specific facts have changed since the due date for making the election that make the election advantageous to a taxpayer. <u>Id.</u> Here, respondent determined in the private letter ruling that Mr. Kohli "failed to demonstrate unusual and compelling circumstances * * * to overcome the presumption of prejudice to the Government's interests." Priv. Ltr. Rul. 2002-09-052 (Mar. 1, 2002).

Respondent argues Mr. Kohli has not acted reasonably and in good faith because he used hindsight in requesting relief. We agree. We find no difference between this case and numerous cases where reasonableness and good faith were lacking when a taxpayer attempted to make a mark-to-market election at least 12 months late to convert capital losses into ordinary losses while continuing to trade. See <u>Knish v. Commissioner</u>, T.C. Memo 2006-268; <u>Acar v. United States</u>, <u>supra</u>.

We also reject Mr. Kohli's argument that this case is identical to the sole case in which we ruled that the taxpayer acted reasonably and in good faith. Vines v. Commissioner, supra. Mr. Kohli needed to make the election for the mark-to-market accounting method by April 17, 2000, without regard to extensions. Unlike the taxpayer in Vines who filed the election only two months late, Mr. Kohli elected the mark-to-market accounting method 12 months after the election filing due date. Moreover, the taxpayer in Vines conducted no trading activities and incurred no losses between the due date of the election and the date on which the taxpayer filed it. In contrast, Mr. Kohli claims losses for events that occurred well after the election due date. Mr. Kohli's use of the year-end values to determine losses under the mark-to-market method necessarily recognizes the changes in market value that occurred after the election due date of April 17, 2000. This is yet one more example of a taxpayer using hindsight to make the mark-to-market election when it is most advantageous. Accordingly, we find Mr. Kohli has not acted reasonably and in good faith and does not qualify for section 9100 relief.

Conclusion

We conclude as a matter of law that Mr. Kohli failed to make an effective mark-to-market election under section 475(f) for 2000. Accordingly, we shall grant respondent's motion for partial summary judgment.

To reflect the foregoing,

An appropriate order will
be issued.